**UNITED STATES of America**

v.

**Barry R. STOKES.**

No. 3:06–00204.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 7, 2007.

Courtney D. Trombly, Office of the United States Attorney (MDTN), Nashville, TN, for Plaintiff.

## *ORDER*

KNOWLES, United States Magistrate Judge.

This matter is before the Court following the Court's granting of Defendant's Motion to Reopen Detention Hearing. Docket Nos. 52, 60. The Court held the reopened detention hearing on June 5, 2007.

In his Motion, Defendant argued that he wished to present new evidence concerning matters that had occurred since his detention hearing that, he contended, had effectively eliminated any risk of flight. Specifically, the Motion argued that: (1) his financial condition has deteriorated and that he has lost any possible financial ability to flee the jurisdiction; (2) his incarceration "has been extremely difficult on him," he has physical problems, and he does not have the physical ability to flee the jurisdiction; and (3) since the detention hearing, his father has died and his mother has gone to a nursing home.

Defendant testified at the hearing and presented the testimony of four other witnesses. Defendant presented evidence concerning the topics discussed above at the reopened detention hearing. The Court also allowed Defendant to present evidence concerning other factors that could have been raised at the initial detention hearing, but that were not.

Defendant presented the testimony of two lawyers who had previously represented him and/or his company, 1 Point Solutions. These witnesses essentially testified that Defendant had always appeared in court, in civil cases, as he was required to do. They further testified as to Defendant's ties to the community and his participation in certain civic activities. One of these attorneys, however, had not represented Defendant since approximately 2000, and both were social acquaintances of Defendant.

Defendant also presented the testimony of an investigator from the office of the Federal Public Defender, who testified concerning Defendant's civic activities and ties to the community.

Defendant presented the testimony of his uncle, who stated that, if released, Defendant could stay with him for "a short period of time." Defendant's uncle stated that he would not put up bond money for Defendant, but would only do that for his own children. Defendant's uncle also stated that he was holding approximately $10,300 that had been released to Defendant by the Bankruptcy Trustee. He further testified that he had visited Defendant twice while Defendant has been in custody (approximately 8 months), but that he did not think any other family members had visited Defendant. (These facts were confirmed by Exhibit 14, a log of Defendant's jail visitors.) When asked if he thought Defendant would flee if he were released, Defendant's uncle stated that he could not predict human behavior. He stated, however, that if he were facing the

same situation as Defendant, he would have "grave concerns."

Defendant testified at some length concerning his financial condition and his physical problems. He essentially stated that neither his financial condition nor his physical condition would allow him to flee. He stated that, while he has been in jail his financial condition has deteriorated. He did admit, however, that his uncle was holding the $10,300 referred to above. With regard to his health, he expressed the opinion that he did not have the physical ability to flee. His testimony concerning his health, however, was primarily a series of complaints that he did not believe he was getting proper health care in jail, particularly with regard to his diabetic diet and a prostate problem. But he admitted that he has not written to the Court about his health care concerns, even though he has written letters directly to Judge Echols concerning other topics, including the alleged inadequacy of his former counsel and his desire to be kept updated concerning "any filing in the future and any changes in the docket." Docket Nos. 24, 27.

Defendant also attempted to explain two of the main points the Court considered in the original detention hearing. First, the Court's original detention Order discussed the fact that in August 2006, a 290 page document entitled "How to Change Your Identity" was downloaded from the Internet to Defendant's computer. Defendant testified at the reopened detention hearing that he downloaded this document in connection with a potential contract between his company and American Express. Defendant testified that, in connection with the potential contract, American Express had sent his company a security questionnaire. As a result of the questionnaire, Defendant became interested in computer security and identity theft. He found the referenced document on the Internet, and downloaded it because of his interest in connection with the potential contract—not because he himself was interested in changing his identity.

Second, the Court's original detention order discussed the fact that, during the month of September 2006, six checks totaling almost $60,000 were written on an account of 1 Point Solutions, signed by Defendant and payable to the order of Defendant. The original detention order noted that investigators had been unable to locate that money. Defendant testified, however, that he cashed these six checks and gave the money to his wife, as repayment for her advancement of legal expenses and attorneys' fees for him and for 1Point solutions. When asked why he had written six separate checks instead of just one, he initially stated that he was not certain why he had done that. Upon further questioning, however, he recalled that a bank official had previously told him not to attempt to cash a check for more than $10,000 at the bank, apparently to avoid financial reporting requirements.

The Court observed Defendant closely during the hearing and while he was testifying. Based upon the contradictory testimony he gave, his demeanor while testifying, his attempts to evade answering certain questions, his interest in the outcome of the hearing, and the reasonableness of his testimony, the Court concludes that Defendant was not a credible witness.

For example, Defendant testified concerning his dissatisfaction with the health care he has been receiving while detained. The Government, however, played a tape of a telephone conversation between Defendant and his uncle, in which Defendant praised a physician who was treating him and stated that he would use the services of this physician even if he were not incarcerated.

He also testified that he moved part of his extensive Japanese art collection, which was insured for approximately $2.3 million, to Austin, Texas, the last weekend of September 2006. On September 13, 2006, Judge Haynes had entered a Temporary Restraining Order in a related civil case that, in part, prohibited Defendant from "selling, transferring, encumbering, giving away, hiding, secreting, destroying, damaging, dissipating, or in any way diminishing the value of any assets held in his name." Ex. 18. Defendant testified that he did not believe his actions violated the TRO. Instead, Defendant believed that he was actually complying with the TRO because the alarm system in his home, where the art had been stored, had been or was about to be turned off, and he felt he had to move the art in an effort to keep from diminishing its value. Defendant testified, however, that he never told the attorney who had obtained the TRO that he had moved the art, and that he was not sure whether he ever told the Bankruptcy Trustee that he had moved the art.

Although it was not discussed extensively at the hearing, the Court notes that on May 9, 2007, the Government brought a 78 count Superceding Indictment against Defendant in this case. If convicted on all counts, Defendant faces a maximum prison term of more than 1,000 years.

Based upon the evidenced adduced at the original detention hearing and the reopened detention hearing, and the entire record before the Court, the Court finds by a preponderance of the evidence that there are no conditions or combination of conditions that could be imposed that would reasonably assure the appearance of Defendant if he were released. Therefore, Defendant will be detained pursuant to this Order and the Court's original detention order entered October 20, 2006 (Docket No. 13).

IT IS SO ORDERED.